U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED
2026 NOV -5 P 2:37
CLERK OF COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| PATRICK FAGAN,<br>Plaintiff,<br>v.<br>KENOSHA COUNTY; DAVID W. ZOERNER, Kenosha County Sheriff, in his official capacity; JOHN DOES 1–5, individually and in their official capacities as Sheriff's Deputies of Kenosha County; BADGER CORPORATION (a/k/a BADGER AUCTIONEERS, INC.); IJS STORAGE, LLC, a Wyoming foreign limited liability company; STEVE BILIK, an individual; J. MICHAEL MCTERNAN, an individual; ALIA, DUMEZ & MCTERNAN, S.C., a Wisconsin service corporation; CAGE HOME INVESTMENTS, LLC, a Wisconsin limited liability company; CRAIG PATCH, an individual; A.J. VERMIGLIO, an individual; VICTORY TITLE CO., LLC, a Wisconsin limited liability company; JOE SCHILZ, an individual; TIM PINTER, an individual; JORDAN VANGARDE, an individual; WMB, LLC, a Wyoming limited liability company; SUA SPONTE ROOFING LLC, a Wisconsin entity; and JOHN DOES 6–10, unknown ultimate beneficial owners and control persons,<br>Defendants. | Case No. 26-C 2063<br><br>Judge: NANCY JOSEPH<br>U.S. MAGISTRATE JUDGE |

# COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF UNDER 42 U.S.C. § 1983 AND SUPPLEMENTAL STATE LAW CLAIMS

## (JURY TRIAL DEMANDED)

Plaintiff Patrick Fagan ("Plaintiff" or "Fagan"), appearing pro se, brings this Complaint against the above-named Defendants, and in support thereof alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil rights action brought under 42 U.S.C. § 1983 arising from the unconstitutional seizure of Plaintiff's personal and business property valued in excess of $900,000, executed by Kenosha County through its Sheriff in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and the subsequent unauthorized auction of that property by Defendant Badger Corporation acting under color of state law.

2. This action also arises from a multi-layered fraud scheme — comprising twenty-one (21) independent frauds and legal violations — through which a coordinated enterprise of individuals, shell limited liability companies, a title company, an attorney, and his law firm acquired Plaintiff's commercial real property at 1915 53rd Street, Kenosha, Wisconsin (the "Property") through fraudulent deeds and a void title chain, obtained a retaliatory eviction judgment through perjury and fraud upon the Wisconsin state courts, used that void judgment to seize Plaintiff's personal property through the sheriff's unconstitutional execution of a writ of restitution, and culminated in the unauthorized auction of approximately 3,000 items of Plaintiff's tools, machinery, and equipment through Defendant Badger Corporation on October 20–21, 2026.

3. The Kenosha County Sheriff, in executing the writ of restitution on or about June 15–16, 2026, failed to follow the mandatory procedures of Wis. Stat. § 799.45, returning the writ "partially satisfied" — meaning the sheriff removed Plaintiff from the Property but never removed, stored, or disposed of Plaintiff's personal property "according to law" as required by statute. This failure violated Plaintiff's Fourth Amendment right against unreasonable seizure and his Fourteenth Amendment right to due process of law.

4. Defendant Badger Corporation, a private auction company, auctioned Plaintiff's approximately 3,000 items of personal property on October 20–21, 2026, acting in concert with and under authority derived from the sheriff's process. Under controlling Seventh Circuit precedent, a private party acting jointly with state officials who abuse their authority acts "under color of state law" and is subject to § 1983 liability.

5. The private Defendants — IJS Storage, Bilik, McTernan, his law firm, Cage Home Investments, Patch, Vermiglio, Victory Title, Schilz, Pinter, Vangarde, WMB, Sua Sponte Roofing, and John Does 6–10 — orchestrated, directed, and benefited from the sheriff's unconstitutional seizure and Badger Corporation's auction. They acted as "willful participant[s] in joint activity with the State or its agents" and are therefore liable under § 1983 as co-conspirators, and independently liable under Wisconsin state law for fraud, conversion, civil conspiracy, retaliatory eviction, and other torts.

6. This Complaint seeks compensatory and punitive damages under § 1983 (unlimited by Wisconsin's statutory damage cap, which does not apply to federal civil rights claims), as well as damages under Wisconsin state law, declaratory relief, and such other relief as the Court deems just and proper.

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 ("Federal Question") because Plaintiff's claims arise under the laws of the United States, specifically 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy arising from the same common nucleus of operative facts — the fraudulent acquisition of Plaintiff's real property, the retaliatory eviction, the unconstitutional seizure of Plaintiff's personal property, and the unauthorized auction of that property.

9. This case is distinct from and does not relitigate the claims in Case No. 2:25-CV-1974-BHL. The federal RICO claims in that case were dismissed with prejudice, and the state law claims were dismissed without prejudice. This action asserts entirely different federal claims (§ 1983 civil rights violations) against new Defendants (Kenosha County, Sheriff David W. Zoerner, Sheriff's Deputies, and Badger Corporation) who were not parties to the prior case, and asserts state law claims that were previously dismissed without prejudice and remain available for re-filing. The § 1983 claims address the unconstitutional conduct of the sheriff and the state-action auction — claims and parties that were never litigated in the prior case.

10. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the fraudulent property conveyance in Kenosha, the retaliatory state court eviction in Kenosha County, the sheriff's execution of the writ of restitution in Kenosha, and Badger Corporation's auction of Plaintiff's property.

## III. PARTIES

11. Plaintiff Patrick Fagan is an individual and a citizen of the State of Wisconsin, residing at 3943 Pinehill Blvd, Mt. Pleasant, Wisconsin 53403. At all relevant times, Plaintiff was the owner of the commercial real property located at 1915 53rd St., Kenosha, WI 53140 (the "Property"), and the owner of personal and business property — including tools, machinery, equipment, and tooling — valued in excess of $900,000 located at the Property.

**Federal Defendants**

12. Defendant Kenosha County is a governmental subdivision of the State of Wisconsin. Kenosha County is sued because the Sheriff, through his deputies and agents, executed the writ of restitution in Kenosha County Case No. 2025SC002971 on or about June 15–16, 2026, removing Plaintiff from the Property but returning the writ "partially satisfied" — failing to remove, store, or dispose of Plaintiff's personal property as required by Wis. Stat. § 799.45. Under Whiting v. Marathon County Sheriff's Department, 382 F.3d 700, 704 (7th Cir. 2004), a sheriff's department is "not a legal entity separable from the county government which it serves and is therefore, not subject to suit." Accordingly, Plaintiff sues Kenosha County, which is the proper party for the unconstitutional acts of the sheriff's deputies committed pursuant to a pervasive policy or practice of improperly executing writs of restitution, as established in Wolf-Lillie v. Sonquist, 699 F.2d 864 (7th Cir. 1983).

12a. Defendant David W. Zoerner is the Sheriff of Kenosha County and is sued in his official capacity. Sheriff Zoerner, through his deputies and agents, executed the writ of restitution on or about June 15–16, 2026. As the Seventh Circuit held in Wolf-Lillie v. Sonquist, 699 F.2d 864 (7th Cir. 1983), the sheriff in his official capacity bears responsibility for the unconstitutional execution of writs of restitution by his deputies. An official-capacity suit against the sheriff is effectively a suit against the county.

13. Defendants John Does 1–5 are individual deputy sheriffs of Kenosha County whose exact names and identities are presently unknown to Plaintiff. These individuals physically executed the writ of restitution on or about June 15–16, 2026, and personally failed to follow the mandatory procedures of Wis. Stat. § 799.45. They are sued in their individual capacities for personal participation in the unconstitutional seizure of Plaintiff's property and in their official capacities as agents of Sheriff Zoerner. Their identities will be ascertained

through discovery.

14. Defendant Badger Corporation (a/k/a Badger Auctioneers, Inc.) is a business entity with an address at 990 Richard Street, Lomira, Wisconsin 53048. Badger Corporation auctioned approximately 3,000 items of Plaintiff's personal property on October 20–21, 2026, acting in concert with and under authority derived from the sheriff's process and at the direction of Defendants IJS Storage, Bilik, and McTernan. Under controlling Seventh Circuit precedent, Badger Corporation acted "under color of state law" as an agent of the sheriff and is subject to § 1983 liability.

**§ 1983 Co-Conspirator Defendants (Prior Parties — Joint Action with State Officials)**

15. Defendant IJS Storage, LLC ("IJS Storage") is a Wyoming foreign limited liability company whose principal office is listed as 4623 75th Street, #149, Suite 4, Kenosha, Wisconsin 53142 — a fictitious UPS Store mailbox to which it is not registered. IJS Storage invoked the sheriff's process to execute the eviction and seize Plaintiff's property while its LLC status was revoked by the Wisconsin Department of Financial Institutions ("WDFI"). IJS Storage acted as a willful participant in joint activity with the Sheriff and is liable under § 1983 for invoking and corrupting the state eviction process to seize Plaintiff's property.

16. Defendant Steve Bilik is an individual and, upon information and belief, a citizen of the State of Wisconsin. He is a principal and agent of IJS Storage, a licensed Wisconsin realtor, and was a primary actor who negotiated and orchestrated the fraudulent transaction. Bilik directed and orchestrated the sheriff's execution of the writ, directed Badger Corporation to auction Plaintiff's property, and committed perjury at the eviction trial. Bilik acted jointly with the Sheriff in the seizure of Plaintiff's property and is liable under § 1983.

17. Defendant J. Michael McTernan is an individual and an attorney licensed to practice law in the State of Wisconsin. He is a partner at Defendant Alia, DuMez & McTernan, S.C. and acted as counsel for IJS Storage and Bilik in the state court eviction proceedings. McTernan orchestrated the entire process — committing fraud upon the court, engaging in extortion by demanding a fabricated $200/day storage fee, and directing the seizure and auction of Plaintiff's property. McTernan acted jointly with the Sheriff and is liable under § 1983.

18. Defendant Alia, DuMez & McTernan, S.C. is a Wisconsin service corporation engaged in the practice of law, with its principal place of business at 6633 Green Bay Road, Kenosha, Wisconsin. McTernan's actions were committed within the scope of his employment with this firm, making the firm vicariously liable for McTernan's acts.

**Supplemental Jurisdiction Defendants (State Law Claims — Previously Dismissed Without Prejudice)**

19. Defendant Cage Home Investments, LLC is a Wisconsin limited liability company that participated in the initial fraudulent property transaction by making offers to purchase Plaintiff's Property while concealing the intended substitution of IJS Storage as the buyer.

20. Defendant Craig Patch is an individual and, upon information and belief, a citizen of the State of Wisconsin. He participated in the scheme by making initial offers to purchase and impersonating a principal of IJS Storage. Patch signed the Assignment that purported to transfer rights under an unsigned Sales Contract.

21. Defendant A.J. Vermiglio is an individual and, upon information and belief, a citizen of the State of Wisconsin. He is a principal of IJS Storage who participated in the negotiation and misrepresentations leading to the fraudulent conveyance.

22. Defendant Victory Title Co., LLC is a Wisconsin limited liability company that acted as the settlement agent, drafting and notarizing the void and fraudulent deeds without verifying the legal existence or capacity of the grantee, IJS Storage.

23. Defendant Joe Schilz is an individual associated with Victory Title who prepared and executed the fraudulently altered deeds.

24. Defendant Tim Pinter is an individual and, upon information and belief, a citizen of the State of Wisconsin. He acted as a representative and agent for Defendant Bilik and IJS Storage and was involved in the movement of Bilik's equipment onto the Property.

25. Defendant Jordan Vangarde is an individual and, upon information and belief, a citizen of the State of Wisconsin. He is the principal and owner of Defendant Sua Sponte Roofing LLC. He also participated in the conveyance and orchestration of IJS Storage and submitted fraudulent registration documents to the WDFI.

26. Defendant WMB, LLC is a Wyoming limited liability company registered in Wisconsin on December 12, 2025. It is the actual registered owner of the UPS Store mailbox (#149) used by IJS Storage to perpetrate its fraud, and is a shell company controlled by the enterprise to obscure its structure.

27. Defendant Sua Sponte Roofing LLC is, upon information and belief, a Wisconsin entity that holds itself out to the public as operating from the Property, thereby aiding and abetting the continuity of the fraudulent scheme by creating a false appearance of legitimate business operations.

28. Defendants John Does 6–10 are individuals whose exact names and identities are presently unknown to Plaintiff. Each Doe Defendant participated in, directed, or knowingly facilitated one or more of the frauds, conspiracies, or unconstitutional acts described herein. Their identities will be ascertained through discovery.

## IV. FACTUAL ALLEGATIONS

### A. The Fraudulent Property Conveyance (July – November 2023)

29. In July of 2023, Plaintiff was contacted by Cage Home Investments, LLC to sell his commercial property located at 1915 53rd St. in Kenosha, Wisconsin.

30. Beginning on or about July 28, 2023, and continuing through September 2023, Defendants Bilik, Vermiglio, and Patch, operating individually and through Cage Home Investments, LLC, began drafting documentation and negotiating with Plaintiff for the sale of the Property.

31. Throughout the negotiations, these Defendants represented that they were acting on behalf of a legitimate, legally formed, and properly funded entity capable of purchasing the property. These representations were false.

32. On or about September 18, 2023, a "Sales Contract for Real Estate" was prepared for the Property. The contract identified the Seller as "Patrick Fagan" and the Buyer as "Cage Home Investments and/or assigns." Plaintiff signed the contract as Seller on September 20, 2023. The Buyer line was completely blank — Cage Home Investments never signed. Paragraph 16 of the Sales Contract states: "This instrument will become a binding contract

when accepted by the Seller and signed by both Buyer and Seller." Since the Buyer never signed, the contract was never binding.

33. On or about September 20, 2023, an "Agreement to Assign Contract for Sale and Purchase" was executed. The Assignment was signed by Steve Bilik (Assignee for IJS Storage, LLC) and Craig Patch (Assignor for Cage Home Investments, LLC). Plaintiff never signed the Assignment and was not a party to it. The Assignment purported to transfer Cage Home's rights under a Sales Contract that was never binding because the Buyer never signed. The entire title chain from Plaintiff to IJS Storage is void.

34. At the last minute before the closing on November 13, 2023, Defendants substituted the buyer, changing it from "Cage Home Investments" to "IJS Storage LLC" — a Wyoming LLC that was not registered to do business in Wisconsin.

35. On November 13, 2023, Plaintiff, relying on Defendants' representations and the purported professional role of the settlement agent, Victory Title, signed closing documents that conveyed the Property to IJS Storage LLC for $115,000 and simultaneously entered a lease agreement to rent the Property back from IJS Storage LLC. The signing occurred outdoors at a gas station picnic table, designed to prevent Plaintiff from conducting due diligence on the substituted buyer.

36. The sale price of $115,000 was grossly inadequate. The comparable market value of the Property at the time of the sale was approximately $242,000, meaning Plaintiff was divested of his property for less than one-half of its actual value.

37. The warranty deed and quitclaim deed for this transaction were prepared by Defendant Victory Title / Joe Schilz and were fraudulently altered, rendering them void.

38. At the time of the conveyance, the grantee, IJS Storage LLC, had no legal capacity to hold title in Wisconsin. It was a Wyoming LLC that had not registered with the WDFI. IJS Storage LLC did not become registered with the WDFI until February 28, 2024 — more than three months after the closing.

39. The use of an unregistered, out-of-state LLC was a deliberate component of Defendants' fraudulent scheme, designed to conceal the true parties in interest, create

confusion, and hinder Plaintiff's ability to conduct due diligence.

**B. The Retaliatory Eviction and Fraud Upon the Court (August – October 2025)**

40. On August 12, 2025, Plaintiff, having discovered the fraud, filed a civil action in Kenosha County Circuit Court (Case No. 25-CV-918) to challenge the fraudulent conveyance and quiet title to the Property.

41. On August 27, 2025 — fifteen days after Plaintiff filed his lawsuit — Defendant Steve Bilik signed a sworn declaration stating under penalty of perjury: "As of the date of this Declaration, I nor IJS Storage, LLC have made any sort of efforts towards evicting Patrick Fagan from the Property."

42. On that same day — August 27, 2025 — Defendant McTernan, who had appeared in court for IJS Storage and argued that the court should "preserve the status quo" (meaning no eviction), hand-delivered a 30-Day Notice Terminating Tenancy to Plaintiff in the courthouse hallway after the hearing. This was a direct contradiction: McTernan told the court the status quo should be preserved while simultaneously destroying the status quo by serving the eviction notice.

43. On October 2, 2025, IJS Storage filed a retaliatory eviction action (Case No. 2025SC002971). The purpose of this action was not to enforce a legitimate lease but to dispossess Plaintiff from the Property, punish him for seeking legal recourse, and finalize the fraudulent acquisition by using the state court process as a weapon.

44. At the October 21, 2025 eviction trial, Defendant Bilik, under oath, admitted that IJS Storage's sworn WDFI registration (Form 521, filed February 28, 2024) contained a false statement. The form answered "No" to the question: "Has the company transacted business in Wisconsin without holding a certificate of registration?" Bilik testified that buying and leasing real property constituted "business" and that the answer on the form was incorrect.

45. Despite this admission of perjury and the illegal status of the plaintiff entity, the Kenosha County Circuit Court granted the eviction.

46. Plaintiff appealed and posted a $1,000 undertaking, complying with all conditions. The mandatory statutory stay of the eviction was ignored by the circuit court.

47. On November 24, 2025, Plaintiff filed an Emergency Motion under Dickhut v. Norton, 45 Wis. 2d 389, 173 N.W.2d 297 (1970), raising the defense of retaliatory eviction. The state court never held the Dickhut hearing.

48. The Wisconsin Court of Appeals (Case No. 2025AP2366) affirmed the eviction based on a decision containing clear factual error, incorrectly stating that Plaintiff filed his fraud lawsuit after receiving the eviction notice, when in fact he filed it fifteen days before, proving the retaliatory nature of the eviction.

**C. The Sheriff's Unconstitutional Execution of the Writ (June 2026)**

49. On or about June 15–16, 2026, Kenosha County, through its Sheriff's deputies, executed the writ of restitution issued in Case No. 2025SC002971. The sheriff's deputies physically removed Plaintiff from the Property.

50. The official case record for Case No. 2025SC002971, maintained by the Wisconsin Circuit Court Access (WCCA) system, shows the writ of restitution was returned "partially satisfied."

51. Under Wis. Stat. § 799.45, the sheriff was required to remove all personal property found on the premises — not the property of the plaintiff — and take it to "some place of safekeeping within the county selected by the sheriff." Under Wis. Stat. § 799.45(3m), the landlord could only take over removal/storage/disposal if it specifically notified the sheriff of that intent.

52. The "partial satisfaction" of the writ means: (a) the sheriff removed Plaintiff but never removed, stored, or disposed of the property "according to law"; (b) IJS Storage never lawfully obtained custody of Plaintiff's property through the eviction process; (c) the statutory chain of custody was never triggered; and (d) the property was never "abandoned" — the partial satisfaction proves the writ was not fully executed.

53. The sheriff's failure to follow the mandatory ministerial duty imposed by Wis. Stat. § 799.45 violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments. The sheriff's execution of the writ resulted in an unreasonable seizure of Plaintiff's property — the sheriff removed Plaintiff but left approximately $900,000 of his

personal property at the Property without storing it according to law, enabling IJS Storage to seize and hold the property without lawful authority.

54. As the Seventh Circuit held in Wolf-Lillie v. Sonquist, 699 F.2d 864 (7th Cir. 1983), the Kenosha County Sheriff had a "pervasive pattern or practice" of improperly executing writs of restitution, and this constituted a Fourth Amendment violation creating liability against the sheriff in his official capacity (effectively against the county). The Seventh Circuit affirmed the finding of a Fourth Amendment violation arising from that practice. While Wolf-Lillie addressed stale writs (executed beyond the ten-day statutory window) rather than "partially satisfied" writs, the legal principle is the same: the sheriff's failure to follow the mandatory procedures of § 799.45 constitutes a Fourth Amendment violation.

55. In that same case, the district court found that Wis. Stat. § 799.45 creates a "non-delegable duty" on the sheriff, and that a writ not properly executed is "invalid on its face." The Seventh Circuit, while recognizing that certain duties may be delegated to deputies under § 799.45(3)(d), held that the ten-day execution requirement of § 799.45(5)(a) is "mandatory." Wolf-Lillie v. Sonquist, 699 F.2d 864 (7th Cir. 1983).

56. Wisconsin's statutory damage cap of $50,000 under Wis. Stat. § 893.80(3) does not apply to § 1983 claims brought in federal court. The Wisconsin Legislature's own annotations confirm that § 893.80 "cannot limit damage awards under 42 USC 1983."

**D. Badger Corporation's Auction Under Color of State Law (October 2026)**

57. On or about June 15, 2026, immediately after the sheriff's partial execution of the writ, Defendant McTernan began an extortion campaign, demanding payment of $200 per day in "storage fees" for Plaintiff's personal property. In a recorded call, McTernan falsely represented, "That's what the statute allows." When challenged to provide legal authority, McTernan admitted he could not identify the statute. There is no Wisconsin statute that authorizes a $200/day storage fee.

58. When Plaintiff refused to pay the extortionate demand, Defendants IJS Storage, Bilik, and McTernan directed Defendant Badger Corporation to auction approximately 3,000 items of Plaintiff's tools, machinery, and equipment on October 20–21, 2026.

59. Badger Corporation auctioned Plaintiff's property at the direction of and in concert with Defendants IJS Storage, Bilik, and McTernan — who had obtained apparent authority to dispose of the property through the sheriff's unconstitutional execution of the writ.

60. Under Soldal v. County of Cook, 942 F.2d 1073 (7th Cir. 1991), private parties who act in concert with sheriff's deputies in seizing property act "under color of state law": "it is as if the deputy sheriffs themselves seized the trailer… Equivalently it is as if they had deputized the private defendants to assist them. Thus… we must regard all of the defendants as having acted under color of state law."

61. Under Greco v. Guss, 775 F.2d 161 (7th Cir. 1985), "a private party acting jointly with a state official who abuses his authority also acts under color of state law and is subject to section 1983 liability."

62. Under Wegwart v. Eagle Movers, Inc., 441 F. Supp. 872 (E.D. Wis. 1977) — a case from this federal district — private parties acting at the direction of or in concert with the sheriff act "under color of state law" for § 1983 purposes: "This concert of action between the defendants casts the defendant movers in the role of agents of the sheriffs and brings their actions 'under color of' state law."

63. Badger Corporation's auction of Plaintiff's property was the direct and foreseeable consequence of the sheriff's unconstitutional failure to follow § 799.45. Had the sheriff properly removed and stored Plaintiff's property according to law, Badger Corporation would never have been able to auction it. Badger Corporation stepped into the role the sheriff was legally required to fill — and is therefore liable under § 1983 as a state actor.

64. Plaintiff has obtained photographs of the final sale and a printout of the prices paid — confirming the conversion and reinforcing the $900,000 valuation.

**E. Twenty-One Badges of Fraud (Frauds Nos. 1–21)**

65. The fraudulent scheme described above comprises twenty-one (21) independent frauds and legal violations. Each fraud is described below with the date, the actor, the specific misrepresentation or concealment, and the supporting evidence.

**Fraud No. 1 — Perjury / False Swearing by Steve Bilik (August 27, 2025):** On August 27, 2025, Defendant Bilik signed a sworn declaration stating under penalty of perjury: "As of the date of this Declaration, I nor IJS Storage, LLC have made any sort of efforts towards evicting Patrick Fagan from the Property." On the same day, Defendant McTernan hand-delivered a 30-Day Notice Terminating Tenancy to Plaintiff. This constitutes perjury under Wis. Stat. § 946.31. The materiality standard is established under State v. Munz, 198 Wis. 2d 379, 541 N.W.2d 821 (Ct. App. 1995): "what makes testimony material is the fact that the trial court could have relied on this testimony in rendering a decision." Bilik's declaration was submitted to oppose Plaintiff's TRO, which the court denied six days later.

**Fraud No. 2 — Retaliatory Eviction (August 27, 2025):** The eviction notice was served 15 days after Plaintiff filed his civil fraud lawsuit on August 12, 2025. Under Dickhut v. Norton, 45 Wis. 2d 389, 173 N.W.2d 297 (1970), the 15-day temporal proximity creates a rebuttable presumption of retaliation. Plaintiff properly raised the Dickhut defense on November 24, 2025. The state court never held the hearing.

**Fraud No. 3 — McTernan's Fraud Upon the Court (August 27, 2025):** McTernan filed a brief arguing the court should "preserve the status quo" — meaning no eviction — while simultaneously serving the eviction notice the same day. He argued one thing to the judge while doing the opposite in the hallway. This constitutes fraud upon the court as defined in Garcia v. Griffin (S.D.N.Y. 2021): "A fraud upon the court occurs where it is established by clear and convincing evidence that a party has set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter."

**Fraud No. 4 — Plaintiff's Rent Escrow Offer Ignored (August 27, 2025):** At the August 27, 2025 hearing, Plaintiff explicitly offered to place rent into a court-held trust pending litigation. The court never addressed this offer. Under Fassbender v. Peters, 179 Wis. 587, 191 N.W. 973 (1923), injunctions to preserve the status quo are warranted when there is

"full indemnity to defendant for any damage he may sustain during the suit, coupled with probable injurious consequences to plaintiff if injunction is not granted."

**Fraud No. 5 — Defective Notarization (October 16, 2025):** McTernan's Affidavit of Mailing (Doc. 34 in Case No. 2025SC002971) has a missing or incomplete notary stamp, rendering it a nullity. Under Pfeil v. Loeb, 255 Ill. App. 484 (1930), an affidavit is void when the notary fails to certify authority.

**Fraud No. 6 — Fictitious Wyoming Address / Shell Entity (2023–Present):** IJS Storage's "principal address" is 30 N Gould St Ste N, Sheridan, WY 82801 — the address of Northwest Registered Agent Service Inc., a commercial registered agent service. IJS Storage has no physical presence in Wyoming. Its Wisconsin address is a UPS Store mailbox. No real office anywhere.

**Fraud No. 7 — Sales Contract Never Signed by Buyer (September 18, 2023):** The Sales Contract was signed by Plaintiff as Seller, but the Buyer line (Cage Home Investments) is completely blank. Paragraph 16 requires both parties' signatures for the contract to be binding. It was never binding.

**Fraud No. 8 — Assignment Never Signed by Plaintiff / Void Title Chain (September 20, 2023):** The Assignment was signed by Bilik and Patch only. Plaintiff never signed. The Assignment purports to transfer rights under a contract that was never binding. The entire title chain is void. Under Peterson v. LaMay, 56 Wis. 2d 145, 201 N.W.2d 507 (1972), an assignment does not transfer rights unless there is an express agreement.

**Fraud No. 9 — Partial Satisfaction of Writ / Sheriff Failed Statutory Duty (June 2026):** The writ of restitution was returned "partially satisfied." The sheriff removed Plaintiff but never removed, stored, or disposed of the property "according to law" under Wis. Stat. § 799.45. IJS Storage never lawfully obtained custody. This forms the basis of Plaintiff's § 1983 claim against Kenosha County.

**Fraud No. 10 — Fabricated $200/Day Storage Fee / Unauthorized Auction (June 2026 – October 2026):** McTernan demanded $200/day in "storage fees" he could not justify by statute. When Plaintiff refused to pay, IJS Storage auctioned approximately 3,000 items of

Plaintiff's property through Badger Corporation on October 20–21, 2026 — without any lawful authority. This forms the basis of Plaintiff's § 1983 claim against Badger Corporation.

**Fraud No. 11 — Original Registered Agent Listed at UPS Store Mailbox (February 28, 2024):** IJS Storage's original Form 521 listed its registered agent at the same UPS Store mailbox as its principal office — 4623 75th St., #149, Kenosha, WI 53142. A registered agent at a commercial mail-receiving facility is a badge of fraud indicating the entity has no real physical presence.

**Fraud No. 12 — Change of Registered Agent During Active Litigation (November 19, 2025):** IJS Storage changed its registered agent on November 19, 2025 — during active litigation in both Case No. 2025CV000918 and Case No. 2025SC002971, and only weeks after the eviction trial and appeal. Under Mared Industries, Inc. v. Mansfield, 2005 WI 5, 277 Wis. 2d 350, 690 N.W.2d 835 (2005), "apparent authority is insufficient to bind a principal to service on an agent."

**Fraud No. 13 — WDFI Revocation and Reinstatement: Reinstatement Cures Capacity but NOT Standing (October 14–20, 2026):** IJS Storage's WDFI registration was revoked/terminated on October 14, 2026 — the same day Plaintiff filed his cease and desist documents in state court. IJS Storage was reinstated on October 20, 2026 — the same day as the auction. Under MacDonald Bros. v. Quality Aluminum Casting Co., 251 Wis. 27, 27 N.W.2d 769 (1947), reinstatement "does not resuscitate the forfeited and voided right and power to sue upon a contract which at the time of such making it was wholly unlawful for it to make." The void title chain cannot be cured by reinstatement.

**Fraud No. 14 — Second Change of Registered Agent Effective October 26, 2026 (Continued Evasion):** IJS Storage filed another change of registered agent on October 21, 2026, effective October 26, 2026. This is the second agent change during litigation and appears designed to disrupt service of process.

**Fraud No. 15 — The Lease Expired on April 30, 2024 and Was Never Extended in Writing:** The lease was for a six-month term (November 1, 2023 through April 30, 2024). Section 9 provides that "there will be no holding over past the Term under any circumstances" unless extended by mutual written agreement. Section 42 requires amendments to be in writing

signed by both parties. No written extension was ever executed. The lease expired by its own terms.

**Fraud No. 16 — The Court of Appeals Rewrote the Contract (June 3, 2026):** The Court of Appeals stated the tenancy "continued as a month-to-month tenancy" after the lease term ended — but this ignores Section 9 (no holdover without written extension) and Section 42 (written amendment required). Under Last v. Puehler, 19 Wis. 2d 291, 120 N.W.2d 120 (1963), the landlord must elect to treat a holdover tenant under Wis. Stat. § 234.07, and if so, the lease is "extended upon the terms of the original lease" — not converted to month-to-month.

**Fraud No. 17 — The Insurance Default Was Pretextual (August 27, 2025):** The Court of Appeals found IJS had a "legitimate, nonretaliatory basis to evict him — he neglected to maintain insurance on the property." But Section 24 required insurance "at all times during the Term." The Term ended April 30, 2024. You cannot default on a contractual obligation under a contract that has expired. The insurance default was a manufactured pretext.

**Fraud No. 18 — The Court of Appeals Reversed the Retaliation Timeline (June 3, 2026):** The Court of Appeals stated "Instead of vacating the premises, Fagan filed a lawsuit challenging whether IJS actually held title to the property" — implying Fagan filed suit in response to the eviction notice. But Fagan filed suit on August 12, 2025 — fifteen days BEFORE the eviction notice was served on August 27, 2025. The Court of Appeals reversed the causal sequence.

**Fraud No. 19 — The Lease Has No Abandoned Property Provision — The Old Law Applies (October 31, 2023):** The lease's Section 28 (Surrender) only addresses surrender of the premises — not personal property left behind. There is no provision for storage, landlord disposal, or waiver of storage rights. Under 2011 Act 143, the new law (immediate disposal) applies only if the landlord gave written notice at lease signing. Since the lease contains no such notice, the old law (2009 stats. § 704.05(5)) applies — requiring "actual and reasonable" storage costs, 10-day written notice, 30-day holding period, and right of redemption. The $200/day charge, the failure to give notice, and the auction all violated the old law.

**Fraud No. 20 — The Lease Contains a Binding Arbitration Clause That Was Never Invoked (October 31, 2023):** Section 41 requires that "any dispute arising from this Agreement shall be resolved through binding arbitration conducted in accordance with the rules of the American Arbitration Association." IJS chose to ignore this clause and pursue eviction in circuit court — while simultaneously citing the expired lease's insurance requirement as the basis for eviction. This selective enforcement demonstrates bad faith.

**Fraud No. 21 — The Lease Contains Suspicious Defects Indicating Fraud (October 31, 2023):** The lease was a boilerplate residential lease form hastily used for a commercial property: (a) both landlord and tenant list the same email (wi.house.solutions@gmail.com) — suggesting the landlord pre-filled the tenant's information; (b) the landlord's notice address is a UPS Store mailbox — the same mailbox used as a badge of fraud; (c) Section 1 identifies the premises as a "commercial warehouse" but Section 10 restricts use to "residential purposes only" — a direct contradiction; (d) the lease includes lead-based paint disclosure (Section 34), sex offender registry notice (Section 15), and residential use restriction (Section 10) — all residential provisions inappropriate for a commercial warehouse lease.

**F. The Fictitious Address, Shell Entities, and Obstruction of Justice**

66. Defendant IJS Storage knowingly caused mail to be delivered to a fictitious address. Its principal office is listed as 4623 75th Street, #149, Kenosha, Wisconsin 53142, which is a UPS Store mailbox. A recorded call to the UPS Store confirmed that mailbox #149 is not registered to IJS Storage, but to Defendant WMB, LLC, another shell company controlled by the enterprise.

67. On November 19, 2025, during active state court litigation, IJS Storage changed its registered agent from a local Kenosha address to an entity in Appleton, Wisconsin — over 100 miles away — for the express purpose of evading and obstructing service of process. This act was ratified and utilized by Defendant McTernan.

68. On December 12, 2025, the enterprise formed Defendant WMB, LLC, to further obscure its structure and control of the fraudulent mailbox.

**G. The WDFI Revocation, Reinstatement, and Continued Evasion**

69. The WDFI corporate records for IJS Storage, LLC (Entity ID I040161) reveal the following chronology:

| Date | Transaction | Description |
|---|---|---|
| 02/28/2024 | Registered (Form 521) | Registered agent listed at UPS Store mailbox |
| 03/26/2024 | Amendment | Name change from "IJS STORAGE LLC" to "IJS STORAGE, LLC" |
| 11/19/2025 | Change of Registered Agent | Changed to Northwest Registered Agent LLC, Appleton, WI |
| 08/14/2026 | Intent to Revoke/Terminate | WDFI initiated revocation proceedings |
| 10/14/2026 | Revocation/Termination | Entity revoked — same day Fagan filed cease and desist in state court |
| 10/20/2026 | Certificate of Reinstatement | Entity reinstated — same day as the auction |
| 10/26/2026 | Change of Registered Agent | Second agent change during litigation |

70. The suspicious timing — revocation on the same day as Fagan's cease and desist filing and reinstatement on the same day as the auction — demonstrates that IJS Storage manipulated its corporate status to facilitate the unauthorized auction.

71. Under Bulova Watch Co. v. Anderson, 270 Wis. 21, 70 N.W.2d 243 (1955), a foreign corporation without a certificate of authority "shall not be permitted to maintain or defend a civil action or special proceeding in any court of this state, until such corporation shall have obtained a certificate of authority."

72. However, reinstatement cures the "capacity to sue" defect but does NOT cure the "standing" defect arising from the void title chain. Under MacDonald Bros. v. Quality Aluminum Casting Co., 251 Wis. 27, 27 N.W.2d 769 (1947), a contract entered into without capacity is "absolutely void at and from its inception" and subsequent reinstatement "does not resuscitate the forfeited and voided right and power… to sue upon a contract… which at the time of such making… it was wholly unlawful for it to make."

73. Additionally, Plaintiff is the owner of tooling and equipment purchased from James I. Matzur on June 9, 2018, pursuant to an Asset Purchase and Sale Agreement. These assets — including machinery, tools, and materials — were among the approximately 3,000 items auctioned by Badger Corporation on October 20–21, 2026.

**H. The Expired Lease and Manufactured Insurance Default**

74. The Lease Agreement dated October 31, 2023, between IJS Storage ("Landlord") and Patrick Fagan ("Tenant") was for a fixed six-month term beginning November 1, 2023 and ending April 30, 2024 (Section 3).

75. Section 9 (Holdover Tenancy) states: "Unless this Agreement has been extended by mutual written agreement of the Parties, there will be no holding over past the Term under the terms of this Agreement under any circumstances."

76. Section 42 (Amendments) states: "This Agreement may be amended or modified only by a written agreement signed by the Parties."

77. No written extension was ever executed. The lease expired by its own terms on April 30, 2024.

78. Section 24 (Renter's Insurance) states: "Tenant is required to obtain, and maintain at all times during the Term, a renter's insurance policy with a minimum of $1,000,000.00 personal liability coverage." The insurance requirement applied only "at all times during the Term." The Term ended April 30, 2024.

79. The 30-Day Notice Terminating Tenancy dated August 27, 2025 — served more than 15 months after the lease expired — cited "lack of compliance with the terms and conditions of the lease agreement that required Fagan to maintain insurance on the property." But the lease requiring insurance had been expired for over a year. You cannot default on a contractual obligation under a contract that has expired.

80. The "insurance default" was a manufactured pretext — IJS Storage cited an obligation from an expired lease to justify evicting a tenant who had filed a lawsuit challenging their title 15 days earlier.

**I. Post-Eviction Extortion, Harassment, and Coercion**

81. On June 15, 2026, Plaintiff was unlawfully evicted, and Defendants seized control of over $900,000 of his business and personal property, including all machinery, equipment, tooling, and other personal property from Plaintiff's tenancy.

82. Immediately thereafter, Defendant McTernan began an extortion campaign, demanding payment of $200 per day under a fraudulent claim of a "lien" and legal authority. In a recorded call, McTernan falsely represented, "That's what the statute allows," a fraudulent misrepresentation of law by an officer of the court. When challenged to provide legal authority, McTernan admitted he could not.

83. Defendants McTernan and Bilik then threatened to sell or dispose of all of Plaintiff's property on July 17, 2026.

84. To prevent Plaintiff from mitigating his damages, a person with a caller ID of "ATTORNEY" called Plaintiff's storage container provider (MIT Container) to make a false report and trigger a police response, an act of coordinated harassment.

85. Due to the Defendants' threats and the failure of the state and federal courts to provide any injunctive relief despite Plaintiff's diligent motions, Plaintiff was forced to negotiate the purchase of his own real property back from the Defendants under extreme necessity and duress. Defendants demanded a full and complete release of all claims as a condition of this coerced sale and repeatedly altered the terms of the agreement.

86. The lease's Section 28 (Surrender) only addresses surrender of the premises — not personal property left behind. There is no provision for storage, landlord disposal, or waiver of storage rights. Under 2011 Wisconsin Act 143, the new law (immediate disposal) applies only if the landlord gave written notice at lease signing. Since the lease contains no such notice, the old law applies — requiring "actual and reasonable" storage costs, 10-day written notice, 30-day holding period, and right of redemption. The $200/day charge, the failure to give notice, and the auction all violated the old law.

87. Wisconsin's statutory damage cap of $50,000 under Wis. Stat. § 893.80(3) does not apply to § 1983 claims brought in federal court. The state remedy is inadequate for

Plaintiff's $900,000+ loss — which is only 5.5% of his actual damages. This gross inadequacy defeats any "adequate state remedy" defense to Plaintiff's due process claim.

87a. Plaintiff attempted to mitigate his damages by: (a) filing multiple motions in state court to stay the eviction and protect his property; (b) filing motions in federal court for injunctive relief; (c) attempting to negotiate with Defendants to recover his property; (d) seeking to purchase his own property back from Defendants; and (e) requesting access to remove his personal property. Each of these mitigation efforts was thwarted by Defendants' conduct — including the filing of false police reports to disrupt Plaintiff's storage arrangements, the demand for a fabricated $200/day storage fee, and the refusal to allow Plaintiff access to remove his property. Any defense that Plaintiff failed to mitigate is defeated by Defendants' own obstruction of his mitigation efforts.

**J. The Auction Proceeds — Traceable Funds at Imminent Risk of Dissipation**

88. On October 20–21, 2026, Defendant Badger Corporation conducted the auction of approximately 3,000 items of Plaintiff's personal property at the direction of Defendants IJS Storage, Bilik, and McTernan. The auction generated proceeds that are now in the possession, custody, or control of Badger Corporation, IJS Storage, Bilik, McTernan, and/or their agents and assigns.

89. The auction proceeds are directly traceable to Plaintiff's wrongfully seized and converted property. Under the doctrine of constructive trust, as recognized by federal courts, "if the property has been sold the trust attaches to its proceeds in the hands of the defendant, or to the other property purchased by defendant into which the original property or its proceeds traced." Caballero v. Anselmo, 759 F. Supp. 144, 150 (S.D.N.Y. 1991).

90. There is an imminent and substantial risk that the auction proceeds will be dissipated, transferred, concealed, or spent by Defendants before Plaintiff can obtain a judgment. Defendants have already demonstrated a pattern of concealing assets, transferring funds between shell entities, manipulating corporate registrations, and obstructing justice — including changing registered agents twice during active litigation and manipulating WDFI revocation/reinstatement to facilitate the auction.

91. Unless this Court enters an immediate order attaching the auction proceeds and enjoining Defendants from transferring, dissipating, or concealing those funds, Plaintiff will suffer irreparable harm for which there is no adequate remedy at law. The property itself has been sold to third parties, making replevin or return of the physical property impossible. The auction proceeds are Plaintiff's last remaining avenue for compensation, and they are at imminent risk of disappearing.

## V. CLAIMS FOR RELIEF

### COUNT I — VIOLATION OF 42 U.S.C. § 1983: FOURTH AMENDMENT UNREASONABLE SEIZURE (Against Defendants Kenosha County and John Does 1–5)

92. Plaintiff incorporates by reference the allegations in paragraphs 1–91 as if fully set forth herein.

93. The Fourth Amendment to the United States Constitution protects individuals against unreasonable seizures of their property. The seizure of Plaintiff's personal property — valued in excess of $900,000 — through the sheriff's execution of the writ of restitution was unreasonable because the sheriff failed to follow the mandatory, non-delegable procedures of Wis. Stat. § 799.45.

94. Kenosha County, through the Sheriff's deputies (John Does 1–5), executed the writ of restitution on or about June 15–16, 2026, and returned the writ "partially satisfied" — removing Plaintiff but leaving his personal property at the Property without storing it according to law.

95. As the Seventh Circuit held in Wolf-Lillie v. Sonquist, 699 F.2d 864 (7th Cir. 1983), the Kenosha County Sheriff had a "pervasive pattern or practice" of improperly executing writs of restitution, constituting a Fourth Amendment violation creating liability against the sheriff in his official capacity (effectively against the county). The district court in that case found that Wis. Stat. § 799.45 creates a "non-delegable duty" on the sheriff, and the Seventh Circuit held the statute's ten-day execution requirement to be "mandatory." While Wolf-Lillie addressed stale writs (executed beyond the ten-day window) rather than "partially satisfied" writs, the legal principle is the same: the sheriff's failure to follow the mandatory procedures of § 799.45 constitutes a Fourth Amendment violation.

96. The sheriff's deputies (John Does 1–5) personally participated in the unconstitutional seizure by physically executing the writ without following the mandatory statutory procedures. They are liable in their individual capacities.

97. As a direct and proximate result of the sheriff's unconstitutional conduct, Plaintiff was deprived of his personal property without due process of law, and his property was left vulnerable to seizure and auction by private parties without lawful authority.

98. Wisconsin's statutory damage cap of $50,000 under Wis. Stat. § 893.80(3) does not apply to § 1983 claims. Plaintiff is entitled to full compensatory damages, punitive damages, and such other relief as the Court deems appropriate.

**COUNT II — VIOLATION OF 42 U.S.C. § 1983: FOURTEENTH AMENDMENT DUE PROCESS VIOLATION (Against Defendants Kenosha County, John Does 1–5, and Badger Corporation)**

99. Plaintiff incorporates by reference the allegations in paragraphs 1–98 as if fully set forth herein.

100. The Fourteenth Amendment to the United States Constitution prohibits any state from depriving any person of life, liberty, or property without due process of law.

101. The sheriff's partial execution of the writ — removing Plaintiff but not his property — deprived Plaintiff of his property without due process. The property was not stored according to law, no warehouse receipt was issued, no notice was given, and no opportunity for redemption was provided.

102. Badger Corporation's auction of Plaintiff's property on October 20–21, 2026, constituted a deprivation of property without due process. Badger Corporation acted under color of state law as an agent of the sheriff, stepping into the role the sheriff was legally required to fill.

103. The state remedy is inadequate because: (a) Wisconsin's damage cap limits recovery against the sheriff to $50,000 — only 5.5% of Plaintiff's actual $900,000+ loss; (b) the property has been auctioned and sold, making replevin impossible; and (c) the sheriff's failure was not "random and unauthorized" but was the sheriff's official execution of the writ. As the Seventh Circuit held in Wolf-Lillie v. Sonquist, 699 F.2d 864, 871–72 (7th Cir. 1983), "Parratt is thus not applicable to instances where the substantive guarantees of the Constitution are alleged to be violated." The Fourth Amendment is a substantive guarantee, not a procedural one, and the existence of a state tort remedy does not bar a § 1983 claim for a substantive Fourth Amendment violation.

104. As a direct and proximate result of Defendants' conduct, Plaintiff has been deprived of his personal property valued in excess of $900,000 without due process of law.

**COUNT III — VIOLATION OF 42 U.S.C. § 1983: BADGER CORPORATION ACTING UNDER COLOR OF STATE LAW (Against Defendant Badger Corporation)**

105. Plaintiff incorporates by reference the allegations in paragraphs 1–104 as if fully set forth herein.

106. Under Soldal v. County of Cook, 942 F.2d 1073 (7th Cir. 1991), private parties who act in concert with sheriff's deputies in seizing property act "under color of state law": "it is as if the deputy sheriffs themselves seized the trailer… Equivalently it is as if they had deputized the private defendants to assist them."

107. Under Greco v. Guss, 775 F.2d 161 (7th Cir. 1985), "a private party acting jointly with a state official who abuses his authority also acts under color of state law and is subject to section 1983 liability."

108. Under Wegwart v. Eagle Movers, Inc., 441 F. Supp. 872 (E.D. Wis. 1977) — a case from this federal district — private parties acting at the direction of or in concert with the sheriff act "under color of state law" for § 1983 purposes.

109. Badger Corporation auctioned approximately 3,000 items of Plaintiff's personal property on October 20–21, 2026, at the direction of and in concert with Defendants IJS Storage, Bilik, and McTernan, who had obtained apparent authority through the sheriff's unconstitutional execution of the writ. Badger Corporation stepped into the role the sheriff was legally required to fill under Wis. Stat. § 799.45.

110. As a direct and proximate result of Badger Corporation's conduct, Plaintiff has been deprived of his personal property valued in excess of $900,000 without due process of law.

**COUNT IV — VIOLATION OF 42 U.S.C. § 1983: CIVIL CONSPIRACY WITH STATE ACTORS (Against Defendants IJS Storage, Steve Bilik, J. Michael McTernan, and Alia, DuMez & McTernan, S.C.)**

111. Plaintiff incorporates by reference the allegations in paragraphs 1–110 as if fully set forth herein.

112. Under Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), a private party acts "under color of state law" when they are a "willful participant in joint activity with the State or its agents."

113. Defendants IJS Storage, Bilik, McTernan, and the law firm invoked and corrupted the sheriff's process to seize and auction Plaintiff's property. They directed the sheriff's execution of the writ, directed Badger Corporation to auction the property, and benefited from the unconstitutional seizure.

114. These Defendants acted jointly with the Sheriff and Badger Corporation in depriving Plaintiff of his property without due process. They orchestrated the entire chain of events — from the fraudulent eviction to the sheriff's partial execution of the writ to Badger Corporation's auction — and are liable as co-conspirators under § 1983.

115. As a direct and proximate result of Defendants' conspiracy with state actors, Plaintiff has been deprived of his personal property valued in excess of $900,000.

*Counts V through XVII are asserted under Wisconsin law against the Private Defendants only. The "Private Defendants" are all Defendants other than Kenosha County, David W. Zoerner, and John Does 1–5. No state-law claim is asserted against Kenosha County, Sheriff Zoerner, or the Doe deputies.*

**COUNT V — FRAUD / FRAUDULENT MISREPRESENTATION (Against All Private Defendants)**

116. Plaintiff incorporates by reference the allegations in paragraphs 1–115 as if fully set forth herein.

117. Defendants knowingly made false representations of material fact to Plaintiff, including: (a) that Cage Home Investments, LLC was the buyer when they intended to substitute IJS Storage LLC; (b) that IJS Storage LLC was a valid and legally existing entity capable of purchasing the Property; (c) that the transaction documents were properly executed and binding; and (d) that IJS Storage had a lawful basis for the eviction and the $200/day storage fee.

118. Defendants made these representations with the intent to deceive and induce Plaintiff to sell the Property and surrender his tenancy rights.

119. Plaintiff reasonably relied on these false representations to his detriment, resulting in the loss of his real property, the seizure of his personal property, and damages in excess of $900,000.

**COUNT VI — FRAUDULENT CONCEALMENT (Against All Private Defendants)**

120. Plaintiff incorporates by reference the allegations in paragraphs 1–119 as if fully set forth herein.

121. Defendants concealed material facts from Plaintiff, including: (a) the intended substitution of IJS Storage as the buyer; (b) the fact that IJS Storage was not registered to do business in Wisconsin; (c) the fact that the Sales Contract was never signed by the Buyer; (d) the fact that the Assignment was never signed by Plaintiff; (e) the fictitious nature of IJS Storage's addresses; and (f) the expired nature of the lease.

122. Defendants had a duty to disclose these material facts because they were in a superior position to know the truth and Plaintiff relied on their representations in executing the transaction.

123. Plaintiff was damaged as a direct result of Defendants' fraudulent concealment.

**COUNT VII — CONVERSION (Against All Private Defendants)**

124. Plaintiff incorporates by reference the allegations in paragraphs 1–123 as if fully set forth herein.

125. On June 15, 2026, Defendants wrongfully and without legal justification seized and took control of Plaintiff's personal and business property, valued in excess of $900,000.

126. Defendants continue to wrongfully exert dominion and control over this property and have conditioned its return on the payment of fictitious and extortionate fees and the execution of a release of all legal claims.

127. Badger Corporation's auction of approximately 3,000 items of Plaintiff's property on October 20–21, 2026, constitutes the ultimate act of conversion — the property has been sold to third parties, making return impossible and requiring monetary compensation.

**COUNT VIII — RETALIATORY EVICTION (Against Defendants IJS Storage, Bilik, and McTernan)**

128. Plaintiff incorporates by reference the allegations in paragraphs 1–127 as if fully set forth herein.

129. Defendants initiated and prosecuted the eviction action against Plaintiff after and in direct retaliation for Plaintiff exercising his legal right to file a civil lawsuit challenging the fraudulent conveyance of his property on August 12, 2025 — fifteen days before the termination notice was served on August 27, 2025.

130. Under Dickhut v. Norton, 45 Wis. 2d 389, 173 N.W.2d 297 (1970), and Wis. Admin. Code ATCP § 134.09(5), this conduct violates Wisconsin public policy and law prohibiting retaliatory eviction. The 15-day temporal proximity between Plaintiff's lawsuit and the eviction notice creates a rebuttable presumption of retaliation.

**COUNT IX — CIVIL CONSPIRACY (Against All Private Defendants)**

131. Plaintiff incorporates by reference the allegations in paragraphs 1–130 as if fully set forth herein.

132. Defendants formed a combination or agreement to accomplish a lawful purpose (the purchase of real estate) through unlawful means (fraud, deceit, misrepresentation, extortion, perjury, and unconstitutional seizure) or to accomplish an unlawful purpose (the fraudulent deprivation of Plaintiff's real and personal property).

133. In furtherance of this conspiracy, Defendants committed numerous overt acts, including: (a) inducing the sale through false pretenses; (b) using a sham, unregistered LLC as the grantee; (c) causing fraudulent deeds to be recorded; (d) initiating a retaliatory eviction action after committing fraud upon the court; (e) using the Property address for an unrelated business to create a false appearance of legitimacy; (f) changing registered agents to evade service; (g) forming WMB, LLC to obscure control of the fictitious mailbox; (h) committing

perjury at the eviction trial; (i) the sheriff's unconstitutional partial execution of the writ; (j) demanding extortionate $200/day storage fees; (k) Badger Corporation's unauthorized auction of Plaintiff's property; and (l) repeated evasion of service through multiple registered agent changes during litigation.

134. As a direct and proximate result of the acts taken by Defendants in furtherance of their conspiracy, Plaintiff has suffered substantial damages in excess of $900,000.

**COUNT X — WISCONSIN DECEPTIVE TRADE PRACTICES (Wis. Stat. § 100.18) (Against All Private Defendants)**

135. Plaintiff incorporates by reference the allegations in paragraphs 1–134 as if fully set forth herein.

136. Defendants' written and oral representations in the Offer to Purchase and related communications that Cage Home Investments, LLC was the buyer constituted false statements made to the public in a commercial transaction. Plaintiff, as a member of the public, relied on those statements to his pecuniary loss.

137. Plaintiff is entitled to actual damages, treble damages, and attorney fees under Wis. Stat. § 100.18(6).

**COUNT XI — WISCONSIN CONSUMER PROTECTION DOUBLE DAMAGES (Wis. Stat. § 100.20(5)) (Against All Private Defendants)**

138. Plaintiff incorporates by reference the allegations in paragraphs 1–137 as if fully set forth herein.

139. Defendants' conduct in fraudulently acquiring Plaintiff's property, executing a retaliatory eviction, and auctioning Plaintiff's $900,000 in personal property through Badger Corporation constitutes unfair, deceptive, and unconscionable acts in violation of Wis. Stat. § 100.20 and Wisconsin Department of Agriculture, Trade and Consumer Protection regulations.

140. Plaintiff is entitled to double damages under Wis. Stat. § 100.20(5).

**COUNT XII — UNJUST ENRICHMENT (Against All Private Defendants)**

141. Plaintiff incorporates by reference the allegations in paragraphs 1–140 as if fully set forth herein.

142. Defendants have been unjustly enriched by retaining Plaintiff's real property (acquired through fraud) and the proceeds of the auction of Plaintiff's personal property (sold without lawful authority).

143. It would be inequitable for Defendants to retain these benefits. Plaintiff is entitled to restitution of the Property and the proceeds of the auction.

**COUNT XIII — TORTIOUS INTERFERENCE (Against Defendants Pinter, Vangarde, and Sua Sponte Roofing LLC)**

144. Plaintiff incorporates by reference the allegations in paragraphs 1–143 as if fully set forth herein.

145. Defendants Pinter, Vangarde, and Sua Sponte Roofing intentionally and improperly interfered with Plaintiff's possessory interest in the Property and his business operations by: (a) moving Bilik's equipment onto the Property without authorization; (b) conducting false business operations from the Property address; and (c) aiding and abetting the fraudulent scheme.

146. As a direct and proximate result of Defendants' tortious interference, Plaintiff has suffered damages.

**COUNT XIV — BREACH OF CONTRACT / VOID CONTRACT (Against Defendants IJS Storage and Bilik)**

147. Plaintiff incorporates by reference the allegations in paragraphs 1–146 as if fully set forth herein.

148. The Sales Contract dated September 18, 2023, was never binding because the Buyer (Cage Home Investments) never signed it, as required by Paragraph 16. The Assignment was never signed by Plaintiff. The entire title chain is void.

149. The lease expired on April 30, 2024, and was never extended in writing as required by Sections 9 and 42. The insurance requirement expired with the lease. IJS Storage's selective enforcement of the expired lease — citing the insurance requirement while ignoring the arbitration clause and the no-holdover provision — constitutes bad faith.

**COUNT XV — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Against All Private Defendants)**

150. Plaintiff incorporates by reference the allegations in paragraphs 1–149 as if fully set forth herein.

151. Defendants' conduct — including the fraudulent acquisition of property, the retaliatory eviction, the perjury, the extortion, the threats to sell a lifetime's worth of equipment, the coordinated harassment using law enforcement, the unconstitutional seizure of property by the sheriff, and the unauthorized auction by Badger Corporation — is extreme and outrageous.

152. Defendants intended to cause, or recklessly disregarded the probability of causing, severe emotional distress to Plaintiff, and their conduct did in fact cause such distress.

**COUNT XVI — NECESSITY AND DURESS — SETTLEMENT VOIDABLE (Against Defendants Bilik, IJS Storage, and McTernan)**

153. Plaintiff incorporates by reference the allegations in paragraphs 1–152 as if fully set forth herein.

154. Plaintiff was forced to negotiate the purchase of his own real property back from Defendants to prevent the imminent, irreparable loss of his $900,000 in equipment.

155. This situation meets the three elements of duress: (1) Plaintiff's acceptance of terms was involuntary; (2) circumstances permitted no other alternative due to the failure of the courts to provide a remedy; and (3) these circumstances were the direct result of Defendants' coercive acts, including the threat of sale on July 17, 2026. See Mobility Systems & Equipment Co. v. United States, 51 Fed. Cl. 233 (2001); Freedlander, Inc. v. NCNB, 706 F. Supp. 1211 (E.D. Va. 1988).

156. Any settlement agreement entered into under these conditions is voidable.

**COUNT XVII — CONSTRUCTIVE TRUST ON AUCTION PROCEEDS (Against All Private Defendants)**

157. Plaintiff incorporates by reference the allegations in paragraphs 1–156 as if fully set forth herein.

158. Defendants acquired Plaintiff's personal property — valued in excess of $900,000 — through fraud, breach of duty, and unconstitutional seizure, and then auctioned that property through Defendant Badger Corporation on October 20–21, 2026. The auction proceeds are the direct, traceable fruit of Defendants' wrongful conduct.

159. As the United States Bankruptcy Court held in Seitz v. 6130 West, LLC (In re Joey's Steakhouse, LLC), 474 B.R. 167 (Bankr. E.D. Pa. 2012): "A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." The complaint in that case "alleges that the [property] was wrongly taken from the debtor; that the money it generated was likewise wrongly taken; and that under the circumstances the defendants are unjustly profiting from their wrongful conduct. As a matter of pleading, this is enough to state a viable claim for a constructive trust."

160. As the court held in Caballero v. Anselmo, 759 F. Supp. 144, 150 (S.D.N.Y. 1991): "If the property has been sold the trust attaches to its proceeds in the hands of the defendant, or to the other property purchased by defendant into which the original property or its proceeds traced."

161. As the court held in A.T. Kearney, Inc. v. Inca International, Inc., 477 N.E.2d 1326, 1333 (Ill. App. Ct. 1985): "Where a person acquires property by fraud or otherwise under such circumstances that he holds it upon a constructive trust for the transferor, and the transferee transfers the property to a person who is not a bona fide purchaser, the latter holds the property upon a constructive trust for the person equitably entitled to it." The constructive trust follows the proceeds even to third parties who are not bona fide purchasers.

162. Defendants are not bona fide purchasers. They acquired Plaintiff's property through fraud, perjury, extortion, and unconstitutional state action. They did not pay fair value, they did not act in good faith, and they had full knowledge of Plaintiff's ownership claims —

as demonstrated by their manipulation of the WDFI registration, their repeated changes of registered agents to evade service, and their timing of the auction to coincide with the reinstatement of IJS Storage's corporate status.

163. Plaintiff is entitled to the imposition of a constructive trust upon all auction proceeds held by Defendant Badger Corporation and/or transferred to or held by Defendants IJS Storage, Bilik, McTernan, Alia, DuMez & McTernan, S.C., or any other person or entity that received those proceeds, including an order requiring all such proceeds to be deposited into the registry of this Court or held in escrow pending resolution of this action.

**COUNT XVIII — CONVERSION OF AUCTION PROCEEDS (Against Defendants Badger Corporation, IJS Storage, Bilik, McTernan, and Alia, DuMez & McTernan, S.C.)**

164. Plaintiff incorporates by reference the allegations in paragraphs 1–163 as if fully set forth herein.

165. On October 20–21, 2026, Defendant Badger Corporation, at the direction of Defendants IJS Storage, Bilik, and McTernan, auctioned approximately 3,000 items of Plaintiff's personal property and generated proceeds therefrom. Defendants had no lawful authority to seize, hold, auction, or sell Plaintiff's property. The sheriff's partial execution of the writ of restitution never transferred lawful custody of the property to IJS Storage — the writ was returned "partially satisfied," meaning the property was never removed or stored "according to law" as required by Wis. Stat. § 799.45.

166. Defendants wrongfully converted Plaintiff's personal property to auction proceeds. The conversion is ongoing — Defendants continue to exercise dominion and control over the proceeds of Plaintiff's wrongfully auctioned property and have refused to return or account for those proceeds.

167. Plaintiff has been damaged by Defendants' conversion in an amount not less than $900,000, representing the fair market value of the converted property, plus the value of the proceeds generated by the unauthorized auction.

168. Under the constructive trust doctrine, the auction proceeds represent the traceable proceeds of the converted property and must be held in trust for Plaintiff's benefit. Plaintiff is

entitled to an order requiring Defendants to account for and surrender all auction proceeds.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Patrick Fagan respectfully requests that this Court enter judgment in his favor and against the Defendants identified below, jointly and severally where applicable, as follows:

A. Awarding compensatory damages against Kenosha County and John Does 1–5 under 42 U.S.C. § 1983 for the unconstitutional seizure of Plaintiff's property, in an amount not less than $900,000, without limitation by Wisconsin's $50,000 statutory damage cap;

B. Awarding compensatory damages against Badger Corporation under 42 U.S.C. § 1983 for acting under color of state law in auctioning Plaintiff's property, in an amount not less than $900,000;

C. Awarding compensatory damages against Defendants IJS Storage, Bilik, McTernan, and Alia, DuMez & McTernan, S.C. under 42 U.S.C. § 1983 for conspiracy with state actors, in an amount not less than $900,000;

D. Awarding punitive damages against all Defendants other than Kenosha County and Sheriff Zoerner (in his official capacity) for their willful, wanton, and malicious conduct;

E. Awarding compensatory damages against the Private Defendants for fraud, fraudulent misrepresentation, fraudulent concealment, conversion, retaliatory eviction, civil conspiracy, tortious interference, breach of contract, and intentional infliction of emotional distress;

F. Awarding treble damages under Wis. Stat. § 100.18(6) and double damages under Wis. Stat. § 100.20(5);

G. A declaratory judgment that the Warranty Deed dated November 13, 2023, is void and of no legal effect;

H. An order quieting title to the Property (1915 53rd Street, Kenosha, Wisconsin 53140) in Plaintiff's name, free and clear of any claim by Defendants;

I. A declaratory judgment that the state court eviction judgment is void;

J. Awarding Plaintiff the costs of this action;

K. Impressing a constructive trust upon all auction proceeds generated from the October 20–21, 2026 auction of Plaintiff's personal property, held by Defendant Badger Corporation and/or any other Defendant or third party, and ordering that all such proceeds be deposited into the registry of this Court or held in escrow pending resolution of this action;

L. Awarding compensatory and punitive damages against Defendants Badger Corporation, IJS Storage, Bilik, McTernan, and Alia, DuMez & McTernan, S.C. for conversion of auction proceeds, in an amount not less than $900,000;

M. Ordering an accounting by every Defendant that received or holds any portion of the auction proceeds received from the October 20–21, 2026 auction, including the identity of all purchasers, the sale price of each item, the total gross proceeds, all commissions and fees deducted, and the net proceeds remitted to or held by each Defendant;

N. Granting such other and further relief as the Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 5th, 2026

Respectfully submitted,

_______________________

Patrick Fagan, Pro Se
3943 Pinehill Blvd
Mt. Pleasant, WI 53403
Tel: (920) 256-2096
Email: passportsilver@icloud.com

## VIII. VERIFICATION

I, Patrick Fagan, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on November 5th, 2026.

Patrick Fagan, Plaintiff, Pro Se